## M. B. PULLIAM v. RUNNELS COUNTY.

### No. 6742.

1.   **Constitution — County School Lands.** — The words "may use or dispose of its lands in whole or in part" (in section 6, article 7, of the Constitution) are somewhat difficult of construction.   They certainly tend to indicate that it was intended to give the counties power to convey the fee in their school lands for a consideration other than money.   But the language of the entire section makes it clear that all of the lands or their proceeds were to be held by the counties in trust for the support of the public schools, and that it was not intended that any part was to be diverted in any manner to any other purpose.

2.   **Same—Case Adhered to.**—Tomlinson v. Hopkins County, 57 Texas, 572, adhered to.   The case and the statutes relating to the county school lands discussed.

3.   **Same—County School Lands.**—As to the counties which had already received their lands, it may be that the Legislature could not limit the power of disposition conferred by the Constitution upon the Commissioners Courts.   But the Constitution does not confer upon counties which had received no lands the right to acquire them.   That was left to the Legislature, and the Legislature had the power when it conferred the right, to provide that the counties so acquiring school lands should pay the expenses of their location.

4.   **Same — Statutes Construed.** — Revised Statutes, articles 4032 and 4033, providing the mode by which counties should acquire their school lands, evidently intended that the counties were to pay the expenses from their ordinary funds, and its purpose was to preserve intact the entire body of the lands, or their entire proceeds if sold, as the permanent school fund of the county.

5.   **Case in Judgment.** — Runnels County contracted with land locators to locate its school lands for one-fourth of the land, or 3½ cents per acre.   This was entered of record.   After the land was patented the county commissioners determined to pay by giving the land, and entered an order that the county judge should convey the land.   The county judge executed a deed reciting a money consideration, though none was paid.   *Held*, the deed conveyed no title to the land for want of power in the commissioners to dispose of it to defray expenses of locating it.

6.   **Recitations in Deed.**—A county judge, in executing an order of the Commissioners Court to make deed for land, would be authorized to recite in such deed the true consideration, not a false one.   He could not, therefore, affect the rights of the county by recitals not true in fact

7.   **Power to Sell.** — A purchaser of county school land is chargeable with notice of the power of the agent passing the title from the county.   The records of the Commissioners Court in this case developing the fact that the transaction was not in fact a sale, a subsequent purchaser would be charged with notice, and of the vice in the conveyance by the county judge.

APPEAL from Tom Green.   Tried below before Hon. J. C. Randolph.

This was an action of trespass to try title to a league of land in Pecos County, Texas, brought by Runnels County against M. B. Pulliam, in the District Court of Tom Green County.   The plaintiff in her petition pleaded her title to the land in controversy as one of the four leagues of school land donated to her by the State; and also set up the chain of title under which defendant claimed, which was deed by Runnels county through a former county judge to one Powell, and conveyance from him to defendant, and attacked said deed from the county on the ground that it was

not a sale for cash, but that the consideration was the location of the four leagues of school land for said county by Powell & Gage, a firm of which the grantee, Powell, was a member.

Defendant answered by general demurrer and plea of not guilty, and specially set up that he was an innocent purchaser for value without notice, and that the county having authorized the county judge to deed the land to Powell, and he in making said deed having recited a moneyed consideration for the land and such other facts as authorized sale, and he having been induced by such recitals to buy and pay value, the county was estopped to deny the said recitals.

The case was tried before the court at the November Term, 1888, and resulted in judgment for the plaintiff for possession of and title to the land and cancelling defendant's title.   Defendant appealed.

*H. C. Fisher* and *Fisher & Townes*, for appellant.—1. The Commissioners Court of Runnels County in August, 1883, had the power to dispose of its school lands, and in so doing was not subject to the restrictions of article 681, Revised Statutes.   Const. 1876, art. 7, sec. 6, amendment Sept. 23, 1883; Rev. Stats., arts. 4036, 681; Palo Pinto County v. Gano & Sons, 60 Texas, 251.

2.   The Commissioners Court of Runnels County in August, 1883, had authority to sell the land in controversy for a cash consideration; and having ordered the county judge to make a deed to Powell, and he having done so, reciting in said deed facts which if true would pass the county's title, and said deed having been placed on record in Pecos County, where the land lay, and appellant having purchased said land on the faith of such recitals and without any notice, actual or constructive, of the falsity thereof, and having paid full value for the land, part in cash and balance in negotiable notes, the county is estopped from denying the truth of such recitals or the validity of such deed.

As to the right of county to sell.   Const., 1876, art. 7, sec. 6, amendment Sept. 23, 1883; Rev. Stats., arts. 4036, 681; Palo Pinto County v. Gano & Sons, 60 Texas, 251.

As to acts of agents of corporations and recitals by them.   2 Mora. on Corps., secs. 585, 586, 593, 599 (notes 2, 3), 605, 606; Bige. on Estop., pp. 462, 467; Chicago v. Sexton, 115 Ill., 230; Platter v. Elkhart, 103 Ind., 360; Tongue v. Ins. Co., 91 Pa. St., 387.

As to effect of recitals and estoppel generally.   Link v. Page, 72 Texas, 592; Steffian v. Bank, 69 Texas, 513; Hussey v. Mosser, 70 Texas, 42; 67 Texas, 218; 63 Texas, 362; 39 Texas, 255; 14 Texas, 555; Commrs. v. Aspinwall, 21 How., 560; Moran v. Schenck, 5 Wall., 776, 783; Orleans v. Platt, 9 Otto, 677, 682; Mercer County v. Hackett, 1 Wall., 83, 97; Crane v. Lessees of Morris, 6 Pet., 608, 613; Merchants Bank v. State Bank, 10

Wall., 604, 644; Cromwell v. County of Sac, 96 U. S., 59; School District v. Stone, 106 U. S., 187.

3. The appellant was and is an innocent purchaser for value without notice, and should be protected as such.

As to what records purchasers are required to examine. Word v. Box, 66 Texas, 596; Adams v. Hayden, 60 Texas, 225; Woodward v. Suggett, 59 Texas, 620, 622; Wimberly v. Pabst, 55 Texas, 592.

That appellant's deed is sufficient to support his title as an innocent purchaser. Richardson v. Levi, 67 Texas, 361.

Payment of purchase money and giving negotiable notes. Case v. Jennings, 17 Texas, 673; Cameron v. Romele, 53 Texas, 244.

*W. J. Wingate* and *C. O. Harris*, for appellee.—1. Appellant, Runnels County, held the land in controversy in trust for educational purposes and could only dispose of it in the manner provided by law, and to pass title there must have been an actual sale of the land for money, either in the manner provided in article 681, Revised Statutes, or in some manner provided by the Commissioners Court. Const. 1876, art. 7, sec. 6; Rev. Stats., arts., 681, 4036; Ferguson v. Halsell, 47 Texas, 421; Leavenworth v. Rankin, 2 Kans., 357; 2 Dill. Mun. Corp., secs. 447, 727, 730.

2. The order of the Commissioners Court upon which the deed from Adams to Powell is based is insufficient both in substance and in form to pass title to the land in controversy or to form a muniment of title, and is void for insufficiency of description of the land.

As to insufficiency of substance and form of order. Shumm v. Seymour, 24 N. J. Eq., —.

As to insufficiency of description of the land. Norris v. Hunt, 51 Texas, 614; Flanagan v. Boggess, 46 Texas, 335; Campbell v. Johnson, 44 Mo., 247; Chinoweth v. Haskell, 3 Pet., 96; Gatewood v. House, 65 Mo., 663.

3. The Commissioners Court of Runnels County had no authority to give a part of the county school lands to pay expense of their location. Tomlinson v. Hopkins County, 57 Texas, 572; Dill. on Corp., secs. 55, 101, 102; Williamson v. Davidson, 43 Texas, 2.

4. The recitations made in the deed from Adams to Powell to the effect that Powell's bid had been accepted and that a moneyed consideration had been paid by said Powell for said lands are not authorized by the order of the Commissioners Court upon which the deed is based, and are not within the scope of his authority as county judge and are *ultra vires* and void and do not bind the county. 1 Dill. Mun. Corp., secs. 372, 381 (notes), 383, 384; Shumm v. Seymour, 24 N. J. Eq., —; Mayor v. Reynolds, 25 Md., 1; Hogan v. Philadelphia, 48 Pa. St., 527; Livingston v. Pepion, 31 Ala., 542.

5. Parties dealing with counties in their corporate capacity or with their

agents must look to the authority of both to act.    Cool. Const. Lim., p. 196;  2 Wait's Act. and Def., sec. 331, and authorities cited;  Bank v. Globe Works, 101 Mass., 51;  Minthurn v. Laure, 23 How., 430;  Mayor v. Ray, 19 Wall., 475;  Railway v. Canal Co., 21 Pa., 22;  Miller v. Burch, 32 Texas, 208;  Pye v. Peterson, 45 Texas, 312.

6.    The order of the Commissioners Court authorizing Adams to make deed to Powell was vague and indefinite and failed to show that there had been a sale of the land to Powell; and this order was sufficient within itself to have aroused the suspicions of a prudent man and put him upon inquiry as to the character of the transaction with Powell as to the conveyance of said land to him.    1 Story's Eq. Jur., secs. 400, 401;  Martel v. Somers, 26 Texas, 551;  Wade on Notice, sec. 11, and note;  3 Waits Act. and Def., sec. 449;  7 Wait's Act. and Def., sec. 372;  Hawley v. Bullock, 29 Texas, 216;  Woods v. Carpenter, 101 U. S., 135;  Kennedy v. Green, 3 Mylne & K., 722;  Gogswell v. Stienl, 32 N. J. Eq., 240;  Stafford v. Ballou, 17 Vt., 329;  McDaniels v. Manfg. Co., 28 Vt., 274; 3 Allen, 383.

7.    The law charges appellant with notice that Runnels County held the land in controversy in trust for educational purposes, and that it could only be disposed of in the manner provided by law; and before purchasing the land he should have examined the order of the Commissioners Court upon which the deed from Adams to Powell is based, and should have ascertained whether or not there had in fact been a sale of the land to Powell, and whether or not Powell had paid anything for it, and should have inquired as to the character of the transaction between Powell and Runnels County with reference to said land.    Fannin County v. Riddle, 51 Texas, 360;  Milam County v. Bateman, 54 Texas, 167, 168;  Milam County v. Robertson, 33 Texas, 366;  Tomlinson v. Hopkins County, 57 Texas, 572;  2 Dill., secs. 729, 730.

8.    There being no sale of the land in controversy by the Commissioners Court to Powell, and there being no consideration for the execution of the deed to him except the location of the Runnels County school land by Powell & Gage, said deed was void, and appellant being charged by the law with a knowledge of these facts could not be an innocent purchaser.    Sedgw. on Dam., 7 ed., 406, note;  Tomlinson v. Hopkins County, 57 Texas, 572.

9.    Appellee could in no event be protected as an innocent purchaser as to that portion of the purchase money paid by him after he received actual notice of the character of the conveyance from Adams to Powell. Morris v. Meek, 57 Texas, 385;  Huyler v. Dahoney, 48 Texas, 234;  Fraim v. Frederick, 32 Texas, 294.

GAINES, ASSOCIATE JUSTICE.—This was an action of trespass to try title, brought by Runnels County to recover of appellant a league of land patented to plaintiff as one of the four leagues to which it became enti-

tled under articles 4032 and 4033 of the Revised Statutes, authorizing the appropriation of public lands by certain counties for school purposes.

The facts as shown by the evidence are that the Commissioners Court of Runnels County, at its April Term, 1880, made an order accepting a proposition made by Messrs. Powell & Gage "to locate the four leagues of land donated to Runnels County for county school purposes for one-fourth interest in the land or (3½) three and one-half cents per acre, at the option of the Commissioners Court, * * * the said Powell & Gage to take all risk as to the legality of giving a locative interest in said lands," and that the lands were located in pursuance of the contract. After the work was done Powell acquired the rights of Gage under the agreement, and the Commissioners Court having elected to convey a fourth of the land instead of paying the consideration in money, at a term held in August, 1883, made the following order: "Ordered by the court, that County Judge Sylvester Adams be instructed to make a deed to E. M. Powell [to] one league of Runnels County school land, located in Pecos County." Thereupon the county judge on the 24th day of August, 1883, executed and delivered to Powell a deed to the land in controversy, which contained the following recitals:

"Whereas, at the regular term of the Commissioners Court of Runnels County, held at the court house thereof, and commenced on the second Monday in August, 1883, at which were present the county judge, Sylvester Adams, and the following named commissioners, to-wit, Job Davis, J. B. Yarbro, and R. S. Counts, the following order was entered, in substance as follows, by said court:

"'Resolved by the Commissioners Court, that the bid of E. M. Powell, of Dallas County, State of Texas, of six hundred and nineteen and $\frac{92}{100}$ ($619.92) dollars in cash for school league No. 3 belonging to Runnels County, and situated in Pecos, be accepted, and that the county judge of Runnels County is hereby authorized to make said Powell a deed for said land on payment of said sum of money.' Now, therefore, I, Sylvester Adams, county judge of Runnels County, by virtue of the said order of the Commissioners Court of said county of Runnels and the power vested in me by law, for and in consideration of six hundred and nineteen and $\frac{92}{100}$ dollars to me in hand paid by E. M. Powell of Dallas County, Texas, have granted, bargained, sold," etc. However, no money was in fact paid, the sole consideration of the conveyance being the rights (if any) which the grantee had acquired under the contract of location.

On the 22nd day of January, 1884, E. M. Powell sold and conveyed the land to appellant for the sum of $1180.80 cash, and the further sum of $2361.60 to be paid as evidenced by negotiable promissory notes payable at different dates and secured by a lien on the land. Appellant testified, in effect, that he had no notice either of the orders of the Commissioners

Court or of the previous transactions between Powell and the court other than the deed from the county judge to Powell.

The court below having given judgment for plaintiff for the land in controversy, the defendant, appealing, now insists, first, that under the Constitution, as it existed at the time of the conveyance to Powell, the county had the power to "dispose of" the land otherwise than by sale; and secondly, that in any event, having purchased the land and paid value without other notice of the transactions between the Commissioners Court and the locators than was given by Powell's deed, the county is bound by the recitals in that conveyance, and that he is entitled to protection as an innocent purchaser. Section 6 of article 7 of the Constitution, as it stood before the amendment adopted in November, 1883, reads as follows: "All lands heretofore or hereafter granted to the several counties of this State for education or schools are of right the property of said counties respectively to which they were granted, and the title thereto is vested in said counties, and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands in whole or in part in a manner to be provided by the Commissioners Court of the county. Actual settlers residing on said lands shall be protected in the prior right of purchasing the same to the extent of their settlement, not to exceed 160 acres, at the price fixed by said court, which price shall not include the value of existing improvements made thereon by such settlers. Said lands and the proceeds thereof when sold shall be held by the counties alone as a trust for the benefit of public schools therein, said proceeds to be invested in bonds of the State of Texas or of the United States, and only the interest thereof to be used or expended annually."

The use of the words "may sell or dispose of its lands in whole or in part" is somewhat difficult of construction. They certainly tend to indicate that it was intended to give the counties power to convey the fee in their school lands for a consideration other than money. But the language of the entire section makes it clear that all of the lands or their proceeds were to be held by the counties in trust for the support of the public schools, and that it was not intended that any part was to be divested in any manner to any other purpose.

Such in substance is the express declaration of the last sentence in the section; and we are unable to see how this provision can be given effect if a part of the lands to be thereafter acquired could be conveyed as a compensation for locating and securing patents to the whole. The previous legislation throws light upon the question under consideration.

The Act of February 5, 1843, constituted the chief justice and two associate justices of each county in the Republic ex officio a board of school commissioners for their respective counties, and empowered them "to receive, hold, lease, sell, convey, or otherwise dispose of any lands, tene-

ments, goods, chattels, or other property, real or personal, of any kind whatsoever which shall or may be given, granted, or conveyed to them for the benefit of schools or academies within their said counties by any person, State, or body politic whatever; *provided*, that no act of said commissioners in relation to any property shall be valid except it have for its object the establishment, support, or benefit of schools in their respective counties." Pasch. Dig., art. 3473.

Section 3 of the same act provided that the county treasurer should pay the expenses of locating the lands upon the warrant of the chief justice, but limited the amount to be paid to $100 for each league.

The original Act of January 26, 1837, donating lands to the counties for school purposes, contained the following section: "None of the lands appropriated and set apart by this act for the purpose of education shall be disposed of in any manner except by lease until the expiration of three years, and none of said lands shall be disposed of by lease for a longer term than three years." Pasch. Dig., art. 3467.

In Tomlinson v. Hopkins County, 57 Texas, 572, the question of the validity of a conveyance to Tomlinson of a part of the school lands of that county in pursuance of a contract made between the parties in 1872, by which Tomlinson agreed to locate the lands for a part thereof, came up for consideration, and the court, holding the statutes above cited applicable to the case, determined that the conveyance was absolutely void. It was held, in effect, that the Commissioners Court did not have the power to convey a part of its school lands as a consideration for their location; and we are of opinion that it was not intended to confer that power either by the Constitution of 1876 or by the statutes which have since been passed in pursuance thereof.

It is true that by giving to the words "dispose of" in the section of the Constitution quoted above a broad construction it might be held that the power was conferred, and it may be plausibly argued that if they do not give authority to make a disposition of the lands otherwise than by sale these words mean nothing. But it was certainly never intended to permit the court to give the lands away; and hence it is apparent that some limitation must be placed upon their meaning. In the section of the Act of 1839 which we have quoted above the Legislature authorizes the board to "dispose of" the lands by lease, and we are of opinion that it was in that sense the language under consideration was used by the framers of the Constitution.

So much as to the lands which the counties had acquired for school purposes when the Constitution was adopted. As to those acquired since, there is a more cogent reason why the power to convey the fee in the lands except in pursuance of a sale should be denied. As to the counties which had already received their lands, it may be that the Legislature could not limit the power of disposition conferred by the Constitution upon the

Commissioners Court.    But the Constitution does not confer upon counties which had received no lands the right to acquire them; that was left to the Legislature; and we think the Legislature had the power when it conferred the right to provide that the counties so acquiring lands should pay the expenses of their location.

Article 4032 of the Revised Statutes provides that any county that had not received a grant of school lands should be entitled to have issued by the Commissioner of the General Land Office four certificates for one league of land each, to be located upon any part of the unappropriated public domain of the State.

Article 4033 provides that such certificates may be located and patented as other certificates, "and that the expenses thereof shall be paid by the county to which any such certificates are issued."

This means, we think, that the counties were to pay the expenses from their ordinary funds, and its purpose was to preserve intact the entire body of the lands, or their entire proceeds if sold, as the permanent school fund of the county.    The provision is in accordance with the previous legislation upon the subject and with the spirit of the Constitution.

It follows that the attempted conveyance of the section of land in controversy was without authority of law and is null and void.

We come then to the second question, "Can the plaintiff, by reason of the fact that he bought the property without actual knowledge of the transactions between the Commissioners Court and Powell & Gage which led to the conveyance, hold the land or any part thereof as an innocent purchaser?"

It may be that if the Commissioners Court, who were empowered by law to sell the land, had entered an order reciting that they had sold it to Powell for a sum of money and authorizing a deed to be made to him upon payment of the consideration, and if a deed had been made accordingly, a purchaser without notice of the real transaction would have been protected in his title.    In such a case the county may have been estopped; but that an estoppel would exist we need neither affirm nor deny.

It is clear, we think, that no estoppel could be created by the recitals in the conveyance made by the county judge.    His authority was derived solely from the order of the County Court, which empowered him merely to make a deed and not to recite facts which did not exist.    If the order under the circumstances could be deemed to confer any authority, he was probably authorized in stating the consideration to recite the facts truly, but he was not authorized to make a false recital.    His authority was in writing and could have been given only by an order duly entered upon the minutes of the court; and it was the duty of a person purchasing under his deed to look to the order.    An inspection of the minutes of the court would have shown that the recitals in the deed were made without authority from the court.

Is the county then estopped by the order which purported to empower the county judge to convey? Is there anything in the order that could have misled a purchaser who was informed as to the law to take action by which he was prejudiced? The court had the power to convey the land in consideration of a sale, and there is not a word in it to lead any one to the belief that a sale had been agreed upon. A prudent person who desired to buy under Powell's title, and who, as he was bound to do, looked to the authority of the agent to make the deed, would have inquired into the consideration of the same, and would have made a further examination of the minutes of the Commissioners Court, and this examination would have disclosed the fact that the only contract ever made between the court and Powell was that which was evidenced by the order of April, 1880, which accepted the offer of Powell & Gage to locate the land for one-fourth thereof or at $3\frac{1}{2}$ cents per acre, at the option· of the county.

The Commissioners Court could only contract with reference to the school lands of the county when lawfully assembled to perform the functions devolved upon them by law. A record of their proceedings was required to be kept and to be "read over and signed by the county judge or the member of the court presiding." Rev. Stats., arts. 1527, 1528.

The appellant was bound to take notice of these laws as well as of that which practically prohibited the commissioners from disposing of the fee in the lands except by sales. Northern Bank v. Porter Township, 110 U. S., 608; McPherson v. Foster, 43 Ia., 48.

He must be presumed to have known that if a sale had been lawfully agreed upon or properly authorized, evidence of the fact would have appeared ˙upon the minutes of the court, and he can not be permitted to claim that he relied upon recitals in a deed not warranted by the order of the court. He can neither successfully urge that the county is estopped nor properly claim that he is an innocent purchaser.

We find no error in the judgment and it is affirmed.

*Affirmed.*

Delivered January 27, 1891.