## TARRANT COUNTY V. W. E. BUTLER ET AL.

### Decided April 9, 1904.

**1.—Constitutional Law—Fees of County Clerk's Office Assigned to Counties.**

The Act of June 16, 1897, commonly known as the fee bill, in its provision that the fees of the office of county clerk in excess of certain stated amounts shall be paid over to the county treasurer, is not violative of section 48, article 3, of the Constitution declaring that the Legislature shall not have the right to levy taxes or impose burdens upon the people except for purposes therein specified relating to the State government, nor of section 51 of the same article providing that the Legislature shall have no power to make any grant of public money to any individual, association of individuals, municipal or other corporation whatsoever.

**2.—Same—Conflicts by Implication Not Favored.**

If the statute, in fixing the compensation of county clerks at an amount of fees not exceeding a stated sum, can be said to place their compensation on a salary basis, contrary to the general scheme of the Constitution that their compensation shall be fixed by fees of office, still it is not in direct conflict with section 20, article 5, of the Constitution, providing that "the duties, perquisites and fees of office of the county clerk shall be prescribed by the Legislature;" and conflicts by mere implication with other provisions not relating to the subject are not to be entertained.

**3.—Same—Incidental Result Does Not Vitiate.**

That some of the populous counties will receive money through the excess of fees paid over to them under the statute is but an incidental and remote result of the law, which is designed to properly equalize the compensation of county clerks and to prevent some of them from receiving an unduly large compensation.

**4.—Same—Grant of Public Money to Municipal Corporation.**

The requirement that the excess of fees above a specified sum shall, in certain contingencies, be paid over to the county is not a grant of public money within the meaning of the constitutional provision inhibiting such a grant, for the Constitution can not be held to have had such a fund in view.

**5.—County Clerk—Settlement with Commissioners Court—Conclusiveness.**

The power given the commissioners court by Revised Statutes, article 1537, to "audit, adjust and settle all accounts and claims in favor of the county," is not to be construed as authorizing the county to receive a less sum than is actually due, and a recitation in an order of that court to the effect that a county clerk has fully paid to the county all sums he owed it for excess fees will not estop the county from recovering excess fees which the clerk, with the assent of the court, withheld under a claim he was not entitled in law to make.

**6.—Same—Duty of Clerk to Renew Indexes Worn Out—Expense Thereof.**

Since the statute makes it the duty of the county clerks to properly keep the records and indexes of his office and fixes his fees for transcribing, comparing and verifying record books of his office at so much per hundred words, payable out of the county treasury, it was improper for the commissioners court to allow the clerk, in a gross sum, the excess of the fees of his office in compensation for the expense of providing new indexes for the records of his office in lieu of others worn out.

Appeal from the District Court of Tarrant. Tried below before Hon. M. E. Smith.

*O. S. Lattimore, J. G. Browning,* and *J. C. Smith,* for appellant.

*C. R. Bowlin, Capps & Canty, W. P. McLean, W. A. Hanger,* and *Geo. W. Armstrong,* for appellees.

CONNER, CHIEF JUSTICE.—This suit was instituted by the appellant

county in one of its district courts on April 13, 1903, against the appellee W. E. Butler and sureties on his official bonds as county clerk of said county, to recover about the sum of $18,000, claimed to be due appellant by virtue of the terms of an act of the Legislature of this State approved June 16, 1897, and commonly known as the "fee bill."

It appears from the averments of appellant's petition that the appellee Butler was duly elected and qualified as clerk of the County Court of Tarrant County in November, 1898, and continued to act as such until in November, 1900, when was again elected and again qualified as such clerk, continuing to act as such until the election and qualification of a successor in November, 1902. While not distinctly averred, it seems to be assumed in the pleadings, as it was upon the presentation of this cause before us, that Tarrant County comes within that classification of counties in this State, as prescribed by section 10 of the fee bill, wherein the clerk of the county court is allowed a maximum compensation for services of $2500 per annum, plus one-fourth of the fees collected by him in excess of said $2500, after payment of deputies and office expenses.

Appellant alleges in substance that said Butler, during the first three years he so held office, collected, as fees of office, about the sum of $5000 in excess of all sums to which he was entitled as compensation, which he has refused to pay to the treasurer of the appellant county; that during the last fiscal year he so held office he collected as fees about the sum of $5000 in excess of all sums allowed him by law, which was not accounted for as should have been done, and also by virtue of a contract made with the Commissioners Court of Tarrant County, made "new set of indexes to deed records and other public records of said county to take the place of old worn-out indexes to said records that were worn out by the ordinary use of the public before said Butler's term of office," for which he was paid the further sum of $8000. It was in effect alleged that the making of such indexes was necessary, and such work as is required by law of the county clerk, and appellant sought to recover the several sums specified.

So far as necessary here to notice, appellees pleaded in answer by exception and otherwise that the fee bill invoked by appellant is violation of sections 48 and 51, article 3, of the Constitution; and that appellee Butler had made settlement with the Commissioners Court of the appellant county of all matters involved in this suit accruing before November 30, 1901. The trial court sustained the appellee's plea of settlement, and also appellees' exceptions to the effect that said fee bill was unconstitutional and violative of the sections noted, and hence gave the judgment for appellees from which this appeal has been prosecuted.

If the act of the Legislature, the fee bill, is opposed to the fundamental, the paramount law of the State, it of course must give way. In such event the judgment should be affirmed; for in this contingency the fees of office collected by the county clerk would, perforce of prior en-

actments, belong to him, to the exclusion of the appellant county. We will therefore first determine the objections to the fee bill, and to this end make the following brief epitome of the sections of the Constitution and of the legislative act involved.

Section 48, article 3, of the Constitution declares that the Legislature "shall not have the right to levy taxes or impose burdens upon the people," except for purposes therein specified relating to the State government, which in no instance includes appropriations or donations for the benefit of counties or county officers. Section 51 of the same article of the Constitution provides that, "The Legislature shall have no power to make any grant, or authorize the making of any grant, of public money to any individual, association of individuals, municipal or other corporation whatsoever; provided, that this shall not be so construed as to prevent the grant of aid in case of public calamity."

The fee bill (see Gammel's Laws of Texas, vol. 10, bot. p. 1445 et seq.) prescribes certain fees that may be taxed and collected by designated officers, including clerks of the county courts, for the performance of designated official acts, but further provides, in section 10, that, "The maximum amount of fees of all kinds that may be retained by any officer mentioned  *  *  *  as compensation for services shall be as follows  *  *  *  in counties containing a city of over 25,000 inhabitants, or in which there were cast at the last presidential election as many as 7500 votes, or by the census of 1900 shall contain as many as 37,500 inhabitants,  *  *  *  clerk of the county court  *  *  *  $2500 per annum.  *  *  *  The amounts (section 11) allowed to each officer mentioned  *  *  *  may be retained by him under existing laws; but in no case shall the State or county be responsible for the payment of any sum when the fees collected by any officer are less than the maximum compensation allowed by this act, or be responsible for the pay of any deputy or assistants. Which officer mentioned  *  *  *  shall at the close of each fiscal year make to the district court of the county in which he resides a sworn statement showing the amount of fees collected by him during the fiscal year, and the amount of fees charged and not collected, and by whom due, and the number of deputies and assistants employed by him during the year, and the amounts paid or to be paid each; and all fees collected  *  *  *  during the fiscal year, in excess of the maximum amount allowed and of the one-fourth of excess of the maximum allowed for their services of their deputies or assistants,  *  *  *  shall be paid to the county treasurer of the county where the cost accrued." The law under consideration has other provisions that we do not consider it necessary here to notice.

Appellees' principal contentions are to the effect that the fee bill changes the method prescribed by the Constitution for compensating the officers therein named, and is an indirect attempt to impose by law a tax or burden on the people required to pay the excess fees therein provided for, and is hence inhibited by section 48, article 3, of the Constitution. Also that the excess required by the act to be paid to the county treas-

urer constitutes public funds belonging to the State, and that the payment thereof to such treasurer for the use of the county amounts to a grant of public money to a municipal corporation in violation of said section 51, article 3, of the Constitution.

Section 20, article 5, of the Constitution provides that, "There shall be elected for each county, by the qualified voters, a county clerk, who shall hold his office for two years, who shall be clerk of the county and commissioners courts and recorder of the county, whose duties, perquisites and fees of office shall be prescribed by the Legislature." The power thus given the Legislature to prescribe the "duties, perquisites and fees" of clerks of the county courts is general and without limitation. No other provision of the Constitution specifically relating to the subject is to be found, and we think, therefore, it is not to be inferred or held that the fee bill under consideration is invalid because of the method therein adopted of fixing and limiting the compensation of clerks in the counties to which it applies. We think it can not be said that the fee bill plainly, if at all, places such officers upon the basis of a salary contrary to the asserted general scheme of the Constitution that their compensation shall be fixed by fees of office. But if so, and conceding that such is the general scheme, in view of the unrestricted power and legislative discretion specifically conferred by the section of the Constitution from which we have quoted, conflicts by mere implication with other provisions not relating to the subject are not to be entertained. For no principle of statutory construction is more firmly established than that legislative acts must be held valid unless prohibited by the Constitution in express terms, or by necessary implication. Lytle v. Halff, 75 Texas, 132; Whitner v. Belknap, 89 Texas, 279; Railroad Commission v. Railway Co., 90 Texas, 349.

Nor can we sustain the contentions that the fee bill is a form of levying a tax imposing burdens and granting public moneys contrary to the provisions of sections 48 and 51, article 3, of the Constitution. Such was manifestly not the legislative purpose. As matter of public history relating to the subject, we know that prior to the enactment in question in certain populous counties the compensation of certain officers therein arising from fees fixed by existing laws was enormous and out of all proportion to the value of the service rendered and to compensation received by the great majority of officers in the State, including the highest, and the fee bill manifests the legislative purpose to correct the evil growing out of excessive salaries or fees and to equalize or make uniform, as far as possible, the compensation of all officers performing like public service, and thus to conform, in spirit at least, to section 3, article 1, of the Constitution, which declares that, "All free men when they form a social compact have equal rights, and no man, or set of men, is entitled to exclusive public emoluments or privileges, but in consideration of public services." The fee bill fixes the fees to be collected for the official acts therein designated in accordance with the plan of previous laws, the validity of which has never been questioned, so far as

we know, and merely limits the amounts that may be retained by certain officers as therein specified. In view of the well known fact that in many of the more sparsely settled counties efficient public service could not be secured by fixing fee rates less than as prescribed in the fee bill, it is difficult to see how the beneficial ends desired could have been accomplished in a better way; or at least that another method was required. A constitutional grant of power in general and unrestricted terms, and relating to a specific subject, to fix, as here, the compensation of officers, carries with it the authority to prescribe the method of carrying the power into effect. In other words, the power is coextensive with its terms. Armstrong v. Railway Co., 45 Texas, 265; Morton v. Gordon, Dallam, 379. And in such case restrictions are not to be implied, and the method adopted should not be nullified by general provision found elsewhere. Willis v. Owen, 43 Texas, 55.

It is true that, as one of the results of the operation of the fee bill, sums in excess of the requirements of the public service may, and probably will, be exacted and collected from persons requiring such service, thus in one sense imposing an unnecessary burden. The citizen, however, has no cause of complaint, inasmuch as the law imposes precisely the same burden upon all persons within its scope securing the same official service. The officer ought not to be heard in complaints that his total compensation is limited to the maximum amount stated, and that he is thus denied a benefit not attainable by all other officers of like class. He deliberately seeks and obtains his office with full knowledge of the terms of the law, and when elected enforces its very terms in the collection of his fees. In the accomplishment of the general good some inequalities may be expected to flow from untried legislation, and it certainly can not be said that at the time of the enactment under consideration the Legislature intended the indirect result above indicated, and designed the act with a view of thereby raising a tax for the benefit of any one or more counties. The result pointed out is but incidental and remote. The proximate result, as well as design, of the fee bill is the attainment of public good. It has often been decided that State legislation relating to its internal affairs is not rendered void by the fact that such legislation may indirectly affect interstate commerce over which no State has direct power of control. Doubtless many other instances and authorities might be cited in illustration of the thought we have here sought to present did time and space permit, but we conclude this branch of the subject by saying that in our opinion the law under consideration ought not to be annulled merely because it may incidentally and indirectly have the effect insisted upon.

What we have said also applies, in part at least, to the contention that the fee bill constitutes an unauthorized grant of public moneys to a municipal corporation in violation of section 51, article 3, of the Constitution. It is possibly worthy of notice that the fee bill in express terms does not declare that the excess fees therein specified shall become the property of the county. It simply provides that the officer

shall pay such excess to the county treasurer, without direction as to its further use or appropriation. Assuming, however, that the excess becomes the property of the county, we can not bring ourselves to the conclusion that the fee bill constitutes a grant of public money in the sense in which these terms are used in section 51, article 3, of the Constitution. It is insisted that in the case of Ellis v. Thompson, 95 Texas, 22, our Supreme Court held that the excess under consideration constitutes public moneys. The court does say in the case stated that the fees specified in the act under consideration "are treated as a part of the public revenue to be received by the officer and accounted for as directed." But nothing in the opinion indicates that the Superme Court had in mind the section of the Constitution now under consideration. While it may be difficult to define the exact status of the excess, or to deny that such excess constitutes public money, it is evident that the Constitution makers had no such fund in mind at the time section 51 was adopted. By "public money," as therein used, the framers of the Constitution most probably meant moneys received by officers of the State and belonging to the State, derived in the ordinary processes of taxation, and in other ways permissible under the Constitution. It seems to us that the provision of the fee bill requiring the officer collecting fees to pay part thereof in a certain contingency only to the county treasurer can in no reasonable sense be said to be a grant of public money to a municipal corporation. At least it is not so clearly so as that we feel willing to declare the act unconstitutional on this ground.

Other constitutional objections are urged, but they have not been stressed, and we think them untenable, and therefore overrule all objections to the law under consideration without further discussion. From which it of course follows that we think the trial court erred in the rulings complained of in the fourth, fifth, sixth, seventh and eighth assignments of error.

The remaining questions relate to the $8000 item alleged to have been paid W. E. Butler as compensation for making new indexes, as stated in the beginning of this opinion, and to the settlement with the commissioners court for the fiscal year ending November, 1899; November, 1900, and November, 1901. As we understand the allegations, Butler received this $8000 during the last fiscal year held by him, and hence it in no event could have been included in the settlement with the commissioners court. The settlement pleaded, however, and to which appellant excepted, purports to comprehend all excess fees received by Butler for the first three fiscal years of his entire term. Such settlement is evidenced by what is designated as an order and judgment of the Commissioners Court, which is to the effect that on September 18, 1902, W. E. Butler, as clerk of the County Court of Tarrant County, Texas, had fully paid to the county all sums that he owed Tarrant County for excess and delinquent fees collected by him for and during the years ending November 30, 1899; November 30, 1900, and November 30,

1901, and declared "that such payments to the county shall be and are in full satisfaction of accounts between said W. E. Butler and Tarrant County for said years." The order contains further recitations that we think are without bearing upon the matter under consideration, and which will therefore not be noticed. We can not think that the order or judgment of the Commissioners Court amounts to an estoppel against the county, or precludes the county from the right to recover the full sum to which the county was entitled for the years comprehended within the order. In other words, we think the order was recitative merely, in the nature of a written declaration, and not of the force and effect of a judgment precluding inquiry into the true state of the account. The fee bill required the officer at the close of each fiscal year to return to the district court sworn statements which, if truly made, must have shown the precise amount of excess in fees to which the county was entitled. There is, or should be, no room for controversy, it not being contended or alleged that appellee Butler failed to make such report. The power of the commissioners court invoked (Rev. Stats., art. 1537) " * * * to audit, adjust, and settle all accounts and claims in favor of the county," ought not to be construed as authorizing the county to receive a less sum than was actually due; for the Constitution, section 55, article 3, in effect declares that the Legislature shall have no power to authorize a release or extinguishment of indebtedness of an individual to any county.

If the $8000 allowed appellee Butler for making indexes, etc., during the last fiscal year of his term constituted fees of office within the meaning of the fee bill, then of course the county was entitled to have this item considered in determining the amount of excess due it. The fee bill requires "all fees collected during the fiscal year," etc., to be accounted for, and fixes a maximum amount of fees of "all kinds" which may be retained. It is insisted, however, that the extra services thus compensated were not official; that compensation for making the indexes was a matter purely of contractual right. We do not think so. As we have observed, the Constitution confers general power upon the Legislature to prescribe the duties of county clerks, and by reference to the Revised Statutes, article 1143, and following, it is apparent that the Legislature has made it the duty of the county clerks to keep and preserve the records of their offices, and to keep proper indexes of all records thereof. The duty to safely keep and preserve the records necessarily confers the right to exclude all nonofficials from interference therewith. The commissioners court would be without power, without consent of the clerk, to authorize a stranger to take possession of the records and perform the services contemplated in the work to which the contract of the commissioners court related. The duty to keep and preserve the indexes also necessarily implies the duty to transcribe, renew or make proper indexes when necessary, as was alleged in appellant's petition; and the compensation therefor seems to have been expressly provided, as will be seen from the following quotation from article

2457, Revised Statutes, viz., "transcribing, comparing and verifying record books of his office, payable out of the county treasury upon warrant issued under the order of the commissioners court, for each 100 words ten cents," which seems not to have been affected by the fee bill, as will be evident by an inspection of the twenty-sixth section thereof, providing that laws not in conflict with the act are not affected. For aught that appears the $8000 allowed appellee Butler for making new indexes was but the sum total of fees to which he was entitled therefor under existing law, and the settlement indicated by the order hereinbefore referred to amounted only to the ascertainment of this fact. But however this was, we think the $8000 was official fees within the meaning of the fee bill, for which Butler should be required to account.

Other questions are involved in the exceptions and rulings of the court on the trial, but they are not presented by assignments of error, and we hence do not pass upon them. For the errors noted, however, it is ordered that the judgment be reversed and the cause remanded for a new trial.

*Reversed and remanded.*