SLAUGHTER v. HARDEMAN COUNTY.†

(Court of Civil Appeals of Texas. Ft. Worth. June 3, 1911. Rehearing Denied July 1, 1911.)

1. PUBLIC LANDS (§ 173*)—SCHOOL LANDS AND PROCEEDS—SCHOOL PURPOSES.

All lands granted to counties for educational purposes and the proceeds thereof are held, under the express provision of Const. art. 7, § 6, by the county in trust for the free public schools therein, and a county commissioners' court, which can exercise only such powers as are expressly or by necessary implication conferred upon it by the Constitution or statutes, cannot make a settlement and compromise with a purchaser from a grantee of the county's school lands who has paid no part of the agreed consideration, and its compromise deed of a

part of such lands without other consideration is invalid.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

**2. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—PURCHASE—CONSIDERATION.**

Where defendant, in trespass to try title, claims under a conveyance of school lands, invalid for want of consideration, and does not plead any equity arising out of the good faith of such conveyance, or offer to pay the consideration formerly agreed upon, he cannot take any benefit from the fact that the conveyance has never been set aside.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

Appeal from District Court, Lubbock County; L. S. Kinder, Judge. ·

Action by Hardeman County against C. C. Slaughter. Judgment for plaintiff, and defendant appeals. Affirmed.

K. R. Craig and Bean & Klett, for appellant. J. E. Wiley, Magee & Ratliff, and Fires, Decker & Clarke, for appellee.

CONNER, C. J. Hardeman county instituted this suit on the 19th day of October, 1909, in the usual form of trespass to try title, against C. C. Slaughter for the recovery of the west two-thirds of league No. 66 of Hardeman county school lands situated in Hockley county.

The defendant pleaded not guilty, and specially that on the 18th day of March, 1886, the plaintiff county by authority of its commissioners' court executed and delivered to J. R. Williams a deed conveying its four leagues of school land, including the land in controversy, for a consideration of $5,000, payable as the deed and order of the commissioners' court stipulated, which deed was duly recorded in the deed records of the proper county; that thereafter on the 23d day of March, 1886, said J. R. Williams duly executed a deed conveying the same land to W. F. Reed, this deed also being duly recorded in the proper deed records; that thereafter on the 14th day of April, 1886, the plaintiff county instituted suit in the district court of Baylor county, Tex., to which Hockley county was then attached for judicial purposes, against J. R. Williams, grantee in the deed first above mentioned, by which the plaintiff sought to cancel the conveyance theretofore made to Williams on the grounds of fraud and inadequacy of consideration and that thereafter on September 9, 1886, W. F. Reed, vendee of said Williams, was made a party; that on March 18, 1887, Reed answered by denying the rights set up by the plaintiff in the suit and pleaded a purchase in good faith, at the same time filing his petition for the removal of the cause to the Circuit Court of the United States for the Northern District of Texas on the ground of diverse citizenship; that the petition for removal to the Circuit Court was in due form and verified, and bond

for removal was duly approved and filed, after which a transcript of the record in said cause of Williams & Reed v. Hardeman county, 95 Tex. 165, 13 S. W. 1024, was duly filed in said Circuit Court, where the cause remained pending until the ———— day of December, 1892, when a compromise and settlement of said litigation was agreed upon by the parties thereto, the compromise and the terms thereof being by order of the commissioners' court of Hardeman county duly entered upon the minutes of the court; that by the terms of this compromise W. F. Reed was to reconvey, and later in fact did reconvey, to Hardeman county all of said four leagues of land theretofore conveyed by it to J. R. Williams and by said Williams to said Reed except the land in controversy; that the county in turn in accordance with the terms of the compromise was to, and in fact did, later duly convey to said Reed in confirmation of his title said west two-thirds of league No. 66, and thereupon the said suit of Hardeman county against Williams & Reed before mentioned was dismissed, and Hardeman county was permitted to, and did thereafter, enter upon and take possession of all of said four leagues of land except said west two-thirds of league No. 66 and still holds and enjoys the same under and by virtue of said compromise and settlement; that thereafter said Reed remained in the possession, use, and enjoyment of the land in controversy until its sale, some time before the institution of the suit, to appellant C. C. Slaughter and said settlement and compromise was pleaded in bar of the action. There was also a plea of Hardeman county, in the nature of a reply to the special answer of the defendant Slaughter, to the effect that the conveyance to Williams was fraudulent and subsequently canceled by order of the commissioners' court, and that Reed, as also the defendant Slaughter, purchased with full notice and that the deed from Hardeman county to Reed was without consideration.

The evidence on the part of the county consisted of the patent from the state of Texas to Hardeman county conveying the league of land, of which that in controversy is a part, and on the part of the defendant Slaughter certified copies from the minutes of the commissioners' court of Hardeman county, and of deeds and orders of the district and circuit courts establishing the facts substantially as alleged in his special plea, but in the trial before the court without a jury judgment was rendered in favor of the plaintiff as prayed for in its petition, and from such judgment an appeal has been prosecuted.

But one question has been presented for determination, and that is shown by appellant's only proposition under his first and only assignment of error, viz.: "The record

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

showing that the legal title to the land in controversy had passed out of Hardeman county by the conveyance from said county to Williams and vested in W. F. Reed by the conveyance from Williams to Reed; and that for the purpose of recovering said land the suit was brought by the county to cancel the conveyance made by it to Williams; and that pending said suit and for the purpose of settling the same a compromise of said suit was made between the county, acting by its commissioners' court and the said Reed, by which, in consideration of the reconveyance to the said county of three and one-third leagues of the land in controversy, the county agreed to and did convey to W. F. Reed by deed of release the land in controversy in this suit, and agreed that its suit for the recovery of the four leagues should be dismissed; and that this compromise and settlement of said suit had never been vacated or set aside by any legal proceedings, or otherwise—the county was not entitled to maintain this suit to recover the land herein sued for."

If the commissioners' court of Hardeman county was wholly without power to make the settlement and compromise alleged and shown by appellant, the judgment must stand, otherwise not; for no effort was made by pleading or proof on the part of the county to have this compromise and settlement set aside for fraud or other equitable reason; nor, on the other hand, is there room in the evidence for a contention that appellant in his purchase from Reed was a purchaser for value and without notice, inasmuch as his chain of title exhibits all of the material facts except those charged tending to show that the original deed from the county to Williams was fraudulent. Appellant cites the provisions of the Constitution and of the statutes showing that counties of this state are deemed to be bodies corporate and politic, and cases maintaining the integrity of compromise settlements between individuals and on the part of municipalities, among which we mention as particularly pertinent the City of San Antonio v. St. Ry. Co., 22 Tex. Civ. App. 148, 54 S. W. 281, and Ostrum v. City of San Antonio, 30 Tex. Civ. App. 462, 71 S. W. 305. Article 1537 of the Revised Statutes of 1895, as amended by act of 1897 (see Laws 1897, p. 210), is also cited, the eighth subdivision of which provides that commissioners' courts shall have the power "to audit, adjust, and settle all accounts against the county and direct their payment, and to audit, adjust, and settle all accounts and claims in favor of the county." Had the settlement and compromise in controversy been between individuals or private corporations acting within the scope of their power, the validity of the compromise in question can scarcely be doubted, for no want of good faith on the part of the parties to the compromise appears.

[1] But it is well settled in this state that all lands granted to the several counties for educational purposes and the proceeds thereof are held by the county alone as a trust for the benefit of the public free schools therein and that the county commissioners' court being created for special purposes can exercise only such powers as are expressly or by necessary implication conferred upon them by the Constitution or statutes of the state. See section 6, art. 7, state Constitution; 11 Cyc. 390, subd. "d"; Bland v. Orr, 90 Tex. 492, 39 S. W. 558; Heigel v. Wichita County, 84 Tex. 392, 19 S. W. 562, 31 Am. St. Rep. 63; Midland County v. Slaughter, 130 S. W. 612; Pulliam v. Runnels County, 79 Tex. 363, 15 S. W. 277; Atascosa Co. v. Alderman, 91 S. W. 847; Delta Co. v. Blackburn, 100 Tex. 51, 93 S. W. 419.

In Bland v. Orr, supra, the several laws conferring powers upon commissioners' courts are cited and reviewed, and it was held that notwithstanding subdivision 8 of article 1537 as then existing and as in force at the time of the settlement now under consideration the commissioners' court was without power to compromise the debt of a defaulting treasurer and the sureties on his bond by accepting land and the note of a surety in payment.

In the case of Pulliam v. Runnels County, supra, it was held that a deed executed under the authority of the commissioners' court to a part of the county's public free school lands in payment for services in location conveyed no title, and that subsequent purchasers were affected with notice of the want of power in the commissioners' court to make the deed.

In the case of Atascosa County v. Alderman, cited above, it was held that the county could only dispose of such land by sale and, hence, could not divest its title by an agreement of the commissioners' court with an adjoining owner fixing a boundary line.

In Delta County v. Blackburn, above, it was held that the commissioners' court was without power to reduce the rate of interest upon obligations given to the county for its school lands, basing the conclusion upon section 55, art. 3, of the state Constitution, which is as follows: "The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any incorporation or individual to this state, or to any county, or other municipal corporation therein." See, also, Tarrant Co. v. Butler, 35 Tex. Civ. App. 421, 80 S. W. 656, and Ollivier v. City of Houston, 22 Tex. Civ. App. 55, 54 S. W. 940.

Regardless, therefore, of the eighth subdivision of article 1537 and of the city of San Antonio cases above cited, and upon which appellant relies, we think the settlement and compromise in question was without legal effect. No authority to make it is to be found in either the Constitution or the

laws unless it is to be inferred from subdivision 8 of article 1537, and this in its amended form is without application. In reaching our conclusion effect has been given to the fact, which we perhaps should have before stated, that it affirmatively appears that the consideration originally agreed upon between the county and Williams has never been paid, and that there was no other consideration for the compromise deed to Reed than has been hereinbefore stated. The substance of the entire transaction, therefore, is that Hardeman county through its several commissioners' courts undertook to convey the land in controversy without the receipt of anything whatever of value. In other words, in concrete form the transactions as a whole amount to a gift which is forbidden by the Constitution.

[2] It has been suggested that notwithstanding the invalidity of the compromise agreement and conveyance relied upon there yet remains the county's conveyance to Williams which has never been set aside, and that appellant has all the rights that Williams or Reed could have asserted thereunder. In answer to this suggestion we deem it necessary only to say that the proposition upon which appellant relies embraces no such question, nor, indeed, if we look beyond the proposition do we find that appellant has pleaded any equity arising out of this conveyance. As before stated, it is undisputed that neither Williams nor any one for him ever paid any part of the consideration agreed upon for this conveyance to him, and appellant neither in his pleading nor evidence attempted to maintain the good faith of the conveyance to Williams or offered to pay the consideration then agreed upon which at farthest was all the equity he could in any event have claimed. Estes v. Browning, 11 Tex. 237, 60 Am. Dec. 238; Clay v. Hart, 49 Tex. 433.

We conclude that the judgment must be affirmed and it is so ordered.