# Pittsburgh, Appellant, *v.* Grenet, et al.

# Pittsburgh, Appellant, *v.* Fulton, et al.

# Pittsburgh, Appellant, *v.* Goshorn, et al.

*Cities of the second class—Collector of delinquent taxes—Compensation—Ordinances—Statutory remedy—Jurisdiction Common Pleas—Act of June 20, 1901, P. L. 586—Act of May 8, 1909, P. L. 477.*

1. Under the provisions of the Act of June 20, 1901, P. L. 586, providing that the collector of delinquent taxes in cities of the second class should be the head of the department of delinquent taxes and that "the head of this department shall receive such compensation, either by a stated salary or by fees, as may be fixed by councils" and the provisions of the Act of May 8, 1909, P. L. 477, providing that the collector of delinquent taxes in such cities "shall receive such compensation, either by a stated salary or by fees, as may be fixed by councils" the councils of the City of Pittsburgh had power to fix the compensation of the collector of delinquent taxes by a percentage of the penalty imposed upon delinquent taxpayers.

2. In an action of assumpsit brought by the City of Pittsburgh against a collector of delinquent taxes to recover moneys alleged to have been illegally retained by the defendant, it appeared that the defendant had been appointed collector on April 5, 1909, and that after his appointment he had collected and accounted for the delinquent taxes and water rents upon the basis of compensation to himself at a certain percentage of the penalties collected, doing this under the provisions of the ordinances of the city of March 6, 1906, and of October 14, 1909. The accounts of the collector were duly audited and approved at stated times by the controller of the city. The contention of the city in the suit was that the defendant was entitled to an annual salary of $5,000 in accordance with the Act of March 7, 1901, P. L. 20, and that, therefore, he was indebted to the city in a certain sum representing the excess of percentage of penalties retained by him over said salary. *Held,* that the suit was improperly brought as, if the city had any right of action against the collector, it was bound to proceed in the manner prescribed by the Act of March 7, 1901, P. L. 20, providing that the controller of the city should "audit, examine and settle

568    PITTSBURGH, Appellant, v. GRENET, et al.

the accounts" of the officers of the city and that if an officer "be found indebted, the account shall be stated and filed in the Common Pleas, upon which an appeal may be taken."

Argued October 30, 1912. Appeals, Nos. 171, 172 and 173, Oct. T., 1912, by plaintiff, from orders of C. P. Allegheny Co., April T., 1912, Nos. 1879, 2748 and 1880, discharging rules for judgment for want of sufficient affidavits of defense in cases of The City of Pittsburgh v. Samuel J. Grenet and the National Surety Company of New York; City of Pittsburgh v. Andrew Fulton, James S. Arnold, Roger O'Mara and Jane M. Fulton; and City of Pittsburgh v. Lawrence R. Goshorn and United States Fidelity and Guaranty Company, of Baltimore, Md. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Actions on assumption to recover moneys collected by delinquent tax collectors of the City of Pittsburgh and withheld by them as commissions.

Rules for judgment for want of sufficient affidavits of defense.

SWEARINGEN, J., filed the following opinion in the case of City of Pittsburgh, Etc., v. Samuel J. Grenet and the National Surety Company of New York:

This action of assumpsit was brought by the City of Pittsburgh against Samuel J. Grenet, Collector of Delinquent Taxes, and the surety upon his bond, to recover moneys which, it was alleged, the collector had retained and had not paid into the city treasury. An affidavit of defense was filed, in which all liability was denied. Thereupon the plaintiff entered a rule for judgment for want of a sufficient affidavit of defense.

The City of Pittsburgh was, on April 5, 1909, and since that date it has been continuously a city of the second class under the laws of this Commonwealth. Samuel J. Grenet, the defendant, was, on April 5, 1909, duly appointed head of the department of delinquent

taxes, and since said date he has continuously held said office.

He gave bond in the sum of one hundred thousand dollars with the National Surety Company of New York, the other defendant, as required by law.

The defendant charged the penalty provided by law of five per centum upon the taxes and water rents which were delinquent, deducted the percentage of the penalty allowed to him under the ordinances, to which reference will be hereinafter made, and paid the remainder of the penalty and the taxes and water rents into the city treasury. He neither claimed or received any salary. He made monthly returns in the manner prescribed by the controller, and made monthly payments. Said returns showed the defendant was retaining said portion of said penalty. Out of the portion of the penalty retained by him, the defendant paid all of the salaries and expenses of the office, amounting, during his term, to $53,973.52. During his incumbency of the office, the defendant has collected from delinquent owners of property $1,033.00, being a charge not exceeding $1.00 in each case for procuring accurate descriptions of real estate.

In its statement of demand, the plaintiff stated the amounts paid by the defendant into the city treasury, month by month as aforesaid. It then averred that the defendant should have paid to the city treasurer all the moneys collected by him, and that he was entitled to an annual salary of $5,000 and to no more, in accordance with the Act of March 7, 1901, P. L. 20, to which reference will be hereinafter made. A balance was reached, by adding the amounts of the penalties, retained monthly by the defendant as aforesaid, and the $1,033 above mentioned, and by deducting therefrom salary at the rate of $5,000 per annum, payable monthly. The result thus reached was a balance in the city's favor of $52,617.66, and to recover the said sum, with interest on the respective items from their respective dates, this action of assumpsit was brought. No demand was made

upon the defendant for the payment of any part of said moneys, prior to the issuing of the writ of summons

The fiscal year of the City of Pittsburgh expires on the last day of January of each year. At the end of each year, the accounts of the defendant were audited, examined and settled by the controller of Pittsburgh, and said officer did not find the defendant indebted to the city in any amount. When said audits were made, the controller had personal and official knowledge that the defendant was retaining the compensation fixed by ordinances, to which reference will be hereinafter made, and of the precise amount thereof.

The office of collector of delinquent taxes and water rents in cities of the second class originated in the Act approved March 22, 1877, P. L. 16. Section 7 of that act authorized the city treasurer to appoint such an officer, for the term of five years. The act further provided that he should collect all delinquent taxes and water rents, that his compensation should be ten per centum on the amount collected and paid into the city treasury, which percentage was to "be added to said delinquent taxes and water rents as penalty for non-payment," and that out of said penalty should be paid all costs of office rent, clerk hire and stationery. The collector was also required to "procure an accurate description of the real estate upon which said delinquent taxes have been assessed, if the same are not given on the assessor's books, the cost thereof to be charged against such owner, not to exceed in any case $1.00." The Act approved March 15, 1878, P. L. 7, repealed a portion of the seventh section of said Act of March 22, 1877, continuing, however, the terms of collectors already appointed to the end thereof, and authorized the councils in cities of the second class to establish an office for the collection of delinquent taxes and water rents and to fill the office "for such term and with such compensation as they may by ordinance direct."

Pursuant to the last named statute, an ordinance was

passed by the City of Pittsburgh, September 25, 1882, establishing the office of "collector of delinquent taxes and water rents," requiring him to give bond in the sum of $100,000, and fixing his compensation at five per centum on the amount collected and paid into the city treasury, said percentage to "be added to said delinquent taxes and water rents as penalty for non payment."

March 30, 1896, another ordinance was passed by said city, fixing the compensation of said collector at three-fifth (3-5) of five per centum of the amounts collected and paid by him.

Then came the Act of March 7, 1901, P. L. 20, entitled "An act for the government of cities of the second class," which was amended by the Act of June 20, 1901, P. L. 586. Section I, of Article V, of the act as amended was as follows:

"The collector of delinquent taxes shall be the head of the department of delinquent taxes, and all laws and ordinances in force at the passage of this act, relative to said office and the collection of delinquent taxes, shall be and remain in full force, except so far as the election of the collector of delinquent taxes is therein given to councils. The head of this department shall receive such compensation, either by a stated salary or by fees, as may be fixed by councils."

Section 1 of Article XVII of the amended act was as follows:

"All city officers and employees shall receive a fixed salary for their services, and all fees and penalties shall be collected for the city and paid directly into the city treasury: Provided, That the provisions of this article shall not apply to the collector of delinquent taxes, who shall receive such compensation as may be fixed by councils."

By an ordinance of said city passed March 6, 1906, the compensation of the collector of delinquent taxes was fixed at two-fifths (2-5) of five per centum of the amount

of taxes and water rents collected and paid by him into the city treasury.

Then followed the Act of May 8, 1909, P. L. 477, amending said Act of March 22, 1877. Section 8 of said act provided that:

"Five per centum shall be added to said delinquent taxes and water rents as penalty for non-payment at the time herein prescribed. The collector of delinquent taxes shall receive such compensation, either by a stated salary or by fees, as may be fixed by councils."

Pursuant to the last named statute, an ordinance was passed by said City of Pittsburgh, on October 14, 1909, providing:

"That from and after the passage of this ordinance, the compensation to be received by the collector of delinquent taxes shall be and is hereby fixed and established at the rate of three-tenths (3-10) of the penalty of five per cent. imposed by law on all delinquent taxes and water rents, which shall be collected by him."

In accordance with the foregoing statutes and the said ordinances of March 6th, 1906, and October 14th, 1909, the defendant collected and accounted for the delinquent taxes and water rents of Pittsburgh, from the commencement of his term until the present time. He now contends that, if the plaintiff has any right of action against him, it must proceed in the manner prescribed by Section 7, Article VIII, of the Act of March 7, 1901, P. L. 20, which is a statutory remedy given the plaintiff and is therefore exclusive. We are of opinion that this position is well taken. That section of the act provides that "The controller shall, at the end of each fiscal year ......and upon the death, resignation, removal or expiration of the term of any officer, audit, examine and settle the accounts of such officer;" that, if he be found indebted, an account shall be stated and filed in the Court of Common Pleas, from which an appeal may be taken. In Commonwealth v. Patterson, 206 Pa. 522, the court, in construing the same provision in a similar

statute, held that the remedy by audit was exclusive and that the controller's "official audit is conclusive upon the city." We think the ruling in that case controls in this case.

We might well rest the decision of this case upon the ground, that the plaintiff can not proceed against the defendant in this manner. But other questions have been raised and elaborately argued. Upon these the counsel desire us to pass, in order that the case may be fully presented to the appellate court. It was argued by the plaintiff that, although the city council was authorized to fix the defendant's compensation, yet it has not done so legally, and that therefore the defendant is only entitled to the salary fixed in the schedule to the Act of March 7, 1901, P. L. 20, he being the head of the department. Is this a proper construction of the foregoing legislation, both state and municipal?

The office of collector of delinquent taxes had been already established in the City of Pittsburgh and the collector was proceeding under ordinances duly enacted, when said Act of March 7, 1901, was passed. Consequently all of these "laws and ordinances," except as to the manner of electing the officer, were expressly preserved in force. This of course included the provisions for the compensation of the collector, which theretofore had been lawfully made by the councils of that city. The validity of the ordinance of March 30, 1896, aforesaid, was not and could not be questioned. The legislature, having thus expressly retained in full force this ordinance, we are unable to understand how the defendant is in any way affected by the schedule of the Act of March 7, 1901. That schedule provided for the appointment by the governor of city recorders and for the appointment by the latter of heads of departments—all to hold office until the first Monday of April, 1903. It then proceeded, "The city recorder and the heads of departments to be appointed under this schedule shall receive out of the city treasury annual salaries as follows: the

city recorder, ten thousand dollars; the heads of the departments, five thousand dollars." Thus, even if the compensation of the collector of delinquent taxes ever came under the schedule at all, the provision could not extend beyond the first Monday of April, 1903, by reason of the language of the schedule itself. It is no answer to say that other heads of departments continued to receive the salaries prescribed in the schedule, after the interregnum for which it made provision had ceased. The collector of delinquent taxes stood upon a different footing. His compensation had been already fixed by legislation and by ordinances thereunder, which were expressly retained in force by the very same statute to which the schedule was attached. But the defendant did not receive any compensation in accordance with the ordinance of March 30, 1896. All he received was in accordance with the ordinance of March 6, 1906, passed pursuant to the Act of 1901, and in accordance with the ordinance of October 14, 1909, passed in pursuance of the Act of May 8, 1909. The question then is: Was the enactment of these ordinances a valid exercise of the power conferred by the said statutes? The plaintiff contends that it was not, because the only power conferred upon councils was to fix the compensation in one of two ways, viz: either by a "stated salary" or by "fees"; and, as they did not fix it in either way, the ordinances are therefore void. Our question then requires us to ascertain the meaning of the provision, in the Acts of 1901 and 1909, that

"The head of this department shall receive such compensation, either by a stated salary or by fees, as may be fixed by councils."

For almost twenty-four years, prior to the Act of 1901, the collector of delinquent taxes in cities of the second class had been compensated by percentages on the amounts collected by him, first under the Act of 1877 and then under ordinances pursuant to the Act of 1878. This system, well understood by the legislature, was ex-

pressly preserved in the Acts of 1901, and was undoubtedly continued in force until councils made further provision pursuant to the latter acts. The system had stimulated collections and the city had received all it was entitled to receive. The cost of maintaining the office was placed just where it ought to have been—upon those who neglected to pay promptly their share of the public expense, and not upon the tax payers at large. Of course we are speaking merely of the principle of the system. With any features which might need correction, we have nothing to do. But, in view of the foregoing, is it reasonable to suppose that the legislature, possessed of the knowledge which it had, intended a complete departure by the mere use of the word "fees"? The plaintiff's argument is that the use of the word "fees" by the legislature indicates an intention to exclude the fixing of a salary by percentage. If the intention of the Act of 1901 had been to strike down the system then prevailing, would that same system have been preserved for one hour in the very same statute? If such had been the purpose, it seems to us that it would have been plainly and unequivocally expressed in the statute itself rather than have been left to the discretion of councils, by them to be exercised when they chose. These considerations are very persuasive, though not conclusive, that the authors of the act did not intend to prohibit councils from fixing the collector's compensation by the method of percentage, when the word "fees" was used. Let us then consider whether the fixing of compensation "by fees," one of the methods prescribed in the statute, excludes the fixing of it by a percentage upon the amounts collected.

Fees are "A reward or wages given to one for the execution of his office."—Bouvier.

In many statutes, a fee is a sum certain given for a particular service, but this is not universally true. In some, the word "fee" is used synonymously with the word "percentage" or "commission."

The Act of March 6, 1872, P. L. 208, gave to the district attorney "Fifty per cent. of the fees and percentages......on all forfeited recognizances." The said fifty per cent. of such fees and percentages were held to be fees of his office, for which he must account, pursuant to Section 5, Article XIV, of the Constitution: Commonwealth v. Grier, 152 Pa. 176. Section 3 of the Act of February 22, 1821, 7 Smith's Laws 367, provided,

"That the fees to be taken by the sheriff of each county shall be as follows: ......levying on lands or goods and selling the same," on attachments ca. sas. and selling land under a decree, certain designated percentages upon the amount realized, "but no commission shall be taken for more than the real debt."

The Act of April 2, 1868, P. L. 3, provided that the fees of the sheriff should be, inter alia, for receiving and paying money to the plaintiff a certain percentage; and a like provision for the prothonotary was made in the same act.

Section 27, of the Act of May 2, 1889, P. L. 66, provided,

"That the fees in cases of escheat shall be as follows: To the escheator five per centum on all moneys paid into the state treasury from the sales of escheated property."

The Lien Act of June 4, 1901, P. L. 364, provided in Section 19, that in certain cases the assessment of damages "shall include a five per cent. fee for collection to plaintiff's attorney."

In Philadelphia v. McMichael, 208 Pa. 297, it was held that commissions on personal property tax and on municipal loans, collected by the treasurer, were fees which he was obliged to pay into the treasury pursuant to Section 5, of Article XIV, of the Constitution.

In Austin v. Johns, 62 Tex. 179, 182, the court ruled,

"It is argued, however, that the power, granted to the council, to allow him fees, does not authorize them to grant him commissions on the money collected. There is no force in this objection."

Thus we learn that, in legislative usage and in judicial interpretation, the word "fee" is used synonymously with the word "percentage" or "commission." This is in accordance with the popular understanding of the terms. An attorney's fee is the usual mode of stating the compensation of an attorney, and it may be a percentage of the sum collected. A contingent fee is always based upon the recovery and is always ascertained by a percentage thereof, or by a fractional part thereof, which is the same thing. So that, while the word fee may and often does mean a specific sum given for a certain service, yet it may include a sum to be ascertained by the method of percentage. This being true, it would be a narrow construction to hold that the legislature, in empowering the city councils to fix the compensation of the collector of delinquent taxes by fees, meant thereby to require an ordinance giving him a specific sum of money for each item of service. Besides, this would be impracticable and would necessarily work great hardship. It could not help but bear with undue severity upon the small delinquents, who are the great majority, and be entirely too lenient with the large ones. On the other hand, a percentage upon the amount owing more nearly approaches fairness to delinquent than any other method.

In view of the foregoing, we are of opinion that the provision in the Act of June 20, 1901, and in the Act of May 8, 1909, empowered the councils of the City of Pittsburgh to fix the compensation of the collector of delinquent taxes by a percentage of the penalty imposed upon delinquents. It follows that the ordinances of March 6, 1906, and of October 14, 1909, were valid. It is no answer to say that councils could avoid all question by fixing a stated salary. The statute has authorized compensation in two ways, not in but one, and the method to be adopted is solely for the wisdom of councils.

Our attention has been called to the case of Jenkins v. Scranton, 202 Pa. 267, and it is contended that the de-

cision there is conclusive upon the questions here. We are obliged to hold otherwise. That was a case stated, in which the court was of course confined to the agreement upon facts therein contained. We have carefully studied that case, and, as we gather from the report, the recorder appointed Jenkins collector of delinquent taxes; he therefore was entitled to the salary provided in the schedule of the Act of 1901; subsequently, the councils passed an ordinance giving him a percentage on the amounts collected. But councils were only empowered to reduce to a certain figure the salary of such appointive officer provided in the schedule. They were not empowered to deal with the compensation of such officer in any other way. It was held that the ordinance was invalid. If we are correct in our interpretation of that case, the decision of the point in controversy can have no effect whatever upon the questions here presented.

We think that the fees charged by the defendant for procuring descriptions of real estate, amounting to $1,033.00, were expenses of the office. He was obliged to pay them himself out of the percentage allowed him.

We are of opinion that the plaintiff is not entitled to recover from the defendant in this action.

The court discharged rules for judgment for want of sufficient affidavits of defense. Plaintiff appealed.

*Error assigned* in each case was the order of the court discharging the rule.

*William A. Stone,* for appellant in all three cases.— The remedy provided by the Act of March 7, 1901, P. L. 20, is not exclusive: Philadelphia v. McMichael, 208 Pa. 297.

*W. B. Rodgers,* with him *W. W. Stoner,* for Samuel J. Grenet, et al., appellees.—There is no distinction between percentages and fees: Smith v. Dunn, 68 Cal. 54 (8 Pac. Repr. 825) ; Austin v. Johns, 62 Texas 179; Bed-

well v. Custer County, 51 Neb. 387 (70 N. W. Repr. 945); Pittsburgh v. Anderson, 194 Pa. 172; Schuylkill County v. Pepper, 182 Pa. 13; Philadelphia v. McMichael, 208 Pa. 297.

The remedy provided by the Act of March 7, 1901, P. L. 20, is exclusive: Westmoreland County v. Fisher, 172 Pa. 317; Com. v. Scanlan, 202 Pa. 250; Com. v. Patterson, 206 Pa. 522; Blackmore v. Allegheny County, 51 Pa. 160; Dyer v. Covington Twp., 28 Pa. 186; Schuylkill County v. Boyer, 125 Pa. 226.

*John D. Brown,* for Andrew Fulton, et al., appellees. —The audit was conclusive upon the city: Com. v. Patterson, 206 Pa. 522; Blackmore v. Allegheny County, 51 Pa. 160; Westmoreland County v. Fisher, 172 Pa. 317.

*John P. Hunter,* with him *Walter Lyon* and *Stonecipher & Ralston,* for Lawrence R. Goshorn, appellee.— The audit was conclusive upon the city, and the remedy provided in the statute is exclusive: Com. v. Patterson, 206 Pa. 522; Com. v. Scanlan, 202 Pa. 250; Brown v. White Deer Township, 27 Pa. 109; Westmoreland County v. Fisher, 172 Pa. 317; Leasure v. Mahoning Township, 8 Watts 551; Richter v. Penn Township, 9 Pa. 79; Northampton County v. Yohe, 24 Pa. 305; Rex v. Duchess of Kingston, 20 Howell, State Trials 355, 538; Kilheffer v. Herr, 17 S. & R. 319; Bell v. Allegheny County, 184 Pa. 296; Orr v. Fire Ins. Co., 114 Pa. 387; Danziger v. Williams, 91 Pa. 234.

PER CURIAM, January 6, 1913:

These three appeals, involving the same question, were argued together, and each is dismissed on the opinion of the court below in the Grenet case, refusing judgment for want of a sufficient affidavit of defense.

Appeals dismissed.