BEXAR COUNTY v. LINDEN.   (No. 6070.)

(Court of Civil Appeals of Texas. San Antonio. June 15, 1918. On Motion for Rehearing, July 1, 1918.)

1. DISTRICT AND PROSECUTING ATTORNEYS ⊕⊶5(1)—COMPENSATION.

Omission in Acts 33d Leg. c. 121 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 3881–3883, 3887, 3889, 3893, 3897, 3898) p. 246, of the language relating to district attorneys theretofore appearing in Rev. St. 1911, art. 3881, did not destroy all legislation fixing a maximum compensation to be retained by district attorneys.

2. STATES ⊕⊶119 — PUBLIC FUNDS — USE— "MUNICIPAL CORPORATIONS" — GRANT BY STATE.

A county is a "municipal corporation" within Const. art. 3, § 51, providing that the Legislature shall have no power to make a grant of public money to a municipal corporation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Municipal Corporation.]

3. STATES ⊕⊶119—GRANT—"PUBLIC MONEY."

Fees of office received by district attorney out of state treasury under the provisions of Code Cr. Proc. 1911, arts. 1118, 1119, 1132–1134, are "public money" within the meaning of Const. art. 3, § 51, prohibiting the making of a grant of public money to municipal corporations and others, but commissions on forfeitures of bail bonds deducted under article 1193 are not "public money" within such provision.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Money.]

4. STATES ⊕⊶119—"GRANT"—PUBLIC MONEY.

Acts (Sp. Sess.) 25th Leg. c. 5, in so far as it provides for payment to the county of surplus fees received by district attorney from the state treasury makes a "grant" of public money to a municipal corporation in violation of Const. art. 3, § 51.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Grant.]

5. STATUTES ⊕⊶64(1)—PARTIAL INVALIDITY.

When part of an act has been held unconstitutional and the remaining portion comes up for consideration, the presumption is generally against it, and it will not be sustained unless that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected.

6. DISTRICT AND PROSECUTING ATTORNEYS ⊕⊶5(2)—COMPENSATION—"FEES."

The word "fees" in Rev. St. 1911, art. 3883, relating to limitation of compensation of district attorneys, includes commissions on forfeited bail bonds.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fees.]

7. DISTRICT AND PROSECUTING ATTORNEYS ⊕⊶5(4) — COMPENSATION — FEES — EXPENSES.

Under Rev. St. 1911, arts. 3889, 3897, as amended by Acts 33d Leg. c. 121, all fees collected by a district attorney in which the county is entitled to share beyond a certain limit are to be equally charged with salaries and expenses allowed under the law.

8. DISTRICT AND PROSECUTING ATTORNEYS ⊕⊶5(6)—COMPENSATION—ACTIONS AGAINST COUNTY—VOLUNTARY PAYMENT.

In action by district attorney against a county to recover fees paid into the county treasury, evidence held to sustain finding that such fees were paid under duress.

9. COUNTIES ⊕⊶216—ACTION AGAINST COUNTY — LIMITATIONS — PLEADING — NAMING COUNTY.

Where, taking petition as a whole, it was plain that a suit was against a county, action was begun by proper service thereof within the statute of limitations, although the name of the county was omitted in the introductory paragraph.

10. INTEREST ⊕⊶39(4)—PAYMENT TO COUNTY —DURESS.

Where district attorney made payments of fees to county under duress, he was entitled to interest from time of the payment, and not merely from the time of demanding return of the money.

11. INTEREST ⊕⊶1—EQUITY.

In equity, interest is allowed in order to afford compensation, and is given or withheld as under the circumstances of the case appears just.

12. COUNTIES ⊕⊶228—ACTION AGAINST COUNTY—COSTS.

In action against county where different officers were made defendants, and judgment was had against the county, it was error to tax against the county costs incident to making defendants other than the county parties to the action.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Action by W. C. Linden against Bexar County and others. Judgment for plaintiff, and defendant county appeals. Reformed and affirmed.

Lewright & Douglas, of San Antonio, for appellant. W. C. Linden and Joe H. H. Graham, both of San Antonio, for appellee.

MOURSUND, J. W. C. Linden sued Bexar county, its county judge, county commissioners, and county auditor, to recover $6,919.23, alleged to have been paid to the county treasurer of said county by him as district attorney under the excess fee statute, it being alleged that the statute, in requiring the payment of excess fees to the county treasurer is unconstitutional. Bexar county, in addition to asserting its right to the excess fees so paid by plaintiff, filed a cross-action, seeking to recover of plaintiff $2,818.12, alleged to be still due and unpaid on plaintiff's excess fee account. Upon trial, without a jury, judgment was rendered for plaintiff against Bexar county for the sum sued for, with interest, dismissing the other defendants at the cost of the county, and against the county on its cross-action:

---

⊕⊶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Mr. Linden, while district attorney of Bexar county, paid into the county treasury, on February 19, 1915, as excess fees, $5,056.47, and on February 14, 1916, the further sum of $1,863.23. If the county is entitled to the excess fees, Mr. Linden still owes the excess of those collected during the latter portion of his tenure in office; his theory being that the sum is $2,651.50, while the county auditor estimates it at $2,818.12. If the expenses should be deducted from the total amount of excess fees, the auditor is right. If plaintiff is entitled to one-fourth of the excess before deducting expenses, plaintiff is right.

Bexar county had more than 38,000 population according to the census of 1910. Plaintiff made written demand of Bexar county for the repayment of the two sums so paid by him as required by law, and for the cancellation of the claim of the county for further sums. In the two sums paid by plaintiff into the treasury there was included the sum of $780, received by him as commissions on forfeited bail bonds. The remainder constituted fees of office received by him out of the state treasury under the provisions of articles 1118, 1119, 1132, 1133, and 1134 of the Code of Criminal Procedure. It appears that in the money retained by plaintiff, which the county is seeking to recover, there is included an item of $20, received as commission on a forfeited bail bond. Article 5, § 21, of the Constitution, provides that district attorneys shall receive an annual salary of $500 and such fees, commissions, and perquisites as may be provided by law. Prior to the passage of chapter 5 of the Acts of the Special Session of the Twenty-fifth Legislature, which is the first act in which a limit was undertaken to be fixed as to the compensation of certain officers, including district attorneys, the Legislature had provided for certain fees to be paid the district attorney, and had also prescribed the method to be pursued in order to obtain payment thereof out of the state treasury. See Articles 1131–1134, Code Criminal Procedure 1911. The said act, known as chapter 5, Acts Sp. Sess. 25th Leg. 1897, has the following caption:

"An act to fix certain civil fees to be charged by certain county and precinct officers, and to fix and limit the fees and compensation of clerks of the district court, district attorneys, county attorneys, sheriffs and constables in felony cases, to be paid by the state, and to fix the compensation of assessors and collectors of taxes, and to limit and regulate the compensation of the sheriff, clerk of the county court, county judge, district and county attorney, clerk of the district court, assessor and collector of taxes, justices of the peace and constables, and to prescribe penalties for the violation of this act, and to repeal all laws in conflict herewith."

Sections 1 and 3 of the act, taken together, provide what fees the district or county attorneys shall receive, in counties in which there have been cast 3,000 votes or over, and section 3 has been carried into the Code of Criminal Procedure without reference to section 1, as article 1118, with an additional provision relating to anti-trust suits, with the origin of which we are not concerned in this case. Section 10 of said act provides:

"That hereafter the maximum amount of fees of all kinds that may be retained by any officer mentioned in this section as compensation for services shall be as follows."

Then follows a provision fixing the amount to be retained by named officers, which applies to all counties, except those for which a different rule is prescribed; then follows a provision as to counties with 25,000 inhabitants; then follows the provision relating to counties containing a city of over 25,000, or in which there are as many as 37,500 inhabitants, as to which it is provided that the district attorney shall receive an amount not exceeding $2,500 per annum, inclusive of the $500 allowed by the Constitution and paid by the state, and that in addition each officer should receive one-fourth of the fees collected by him. Section 11 of the act provides for a report to the district court, by the officers, of fees, and that:

"All fees collected by officers named in section 10 of this act during the fiscal year, in excess of the maximum amount allowed and of the one-fourth of the excess of the maximum amount allowed for their services, and for the services of their deputies or assistants hereinafter provided for, shall be paid to the county treasurer of the county where the excess accrued."

The act in question repeals all acts in conflict therewith. At the same session of the Legislature, by chapter 15, section 10 of said chapter 5 was amended, but the change did not affect district attorneys. In the Revised Statutes of 1911, section 10 of said act was divided into many different articles, beginning with No. 3881, and article 3883 is the one which applies to Bexar county, it being a county containing a city of over 25,000 inhabitants and the county having a population in excess of 37,500. That part of section 11 providing for payment of excess into the county treasury is brought forward as article 3889. In 1913 the Legislature (chapter 121, Regular Session) amended articles 3881, 3882, 3883, 3889, and other articles. It omitted district attorneys from article 3881, and made the following changes in article 3883, viz.: A slight change as to population of counties to which it relates; changes in the amounts allowed some of the officers other than district attorneys; the provision giving the officers, in addition to the sum mentioned, one-fourth of the excess of the fees collected, was omitted. Article 3889 was amended so as to provide that each officer should, out of the fees of his office, first pay the amount allowed him "under the provisions of this chapter, together with the salaries of his assistants or deputies"; that if such fees exceed the amount necessary for such purpose, the difference shall be deemed excess fees, and the officer should retain one-fourth thereof; that all amounts received

by such officer as fees of his office, besides those which he is allowed to retain "by the provisions of this chapter, shall be paid into the county treasury of such county." Article 3897 was amended so as to require a monthly report by each officer of expenses other than those for salaries of assistants or deputies, and provides that:

"The amount of such expense shall be deducted by the officer, in making each report, from the amount, if any, due by him to the county under the provisions of this act."

[1] Appellee contends that the omission by the Legislature in the act of 1913 (page 246, Reg. Sess.) of the language relating to district attorneys theretofore appearing in article 3881, in effect destroyed all legislation fixing a maximum compensation to be retained by district attorneys. His theory is that, as article 3881 is the only one which expressly describes the amount to be retained as the maximum amount, the provisions in articles 3882 and 3883, stipulating the amount to be allowed the officers therein mentioned, cannot be held to fix such amount as the maximum amount as to district attorneys. The Senate and House Journals fail to disclose what prompted the Legislature to strike out of article 3881 the words relating to district attorneys, which appears to have been done by the amendment to the original bill. On page 771 of the House Journal we find where an amendment was adopted, which we take to be the one in question, although it refers only to line and page of the original bill. The amendment was probably adopted on the theory that there would be no excess in counties such as are described in article 3881. But, whatever may have been the motive actuating the Legislature, there is nothing in the journals indicating that by striking out such words it was intended to destroy the law in so far as it prescribed maximum compensation for district attorneys in counties falling within the classes described in articles 3882 and 3883. When article 3883 is considered in connection with the language used in amended article 3889, it is clear that the amount named in article 3883 is prescribed as the maximum compensation, aside from the one-fourth of the excess fees allowed by article 3889. If there was any doubt, the caption of the original act and the first sentence of section 10 thereof would require a construction that article 3883 as amended was intended to prescribe the maximum compensation, there being nothing in the history of the legislation indicating a contrary intention. The same Legislature which made the omission in article 3881 thereafter, in amending article 3903, referred to articles 3881 to 3886 as fixing maximum salaries. See Acts 1913, p. 286 (Vernon's Sayles' Ann. Civ. St. 1914, art. 3903). We conclude there is no merit in the contention that after December 1, 1914, the date when said act of 1913 became effective, the statutes no longer contained any provision fixing a maximum of fees to be retained by district attorneys.

[2] Section 51 of article 3 of the Constitution provides:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public money to any individual, association of individuals, municipal or other corporation whatsoever."

As originally adopted, said section had a proviso to the effect that it should not be construed to prevent the grant of aid in case of public calamity. As it now reads, the only proviso is one relating to Confederate soldiers and sailors. Appellee contends that said section prohibits the Legislature from directly or indirectly granting money to counties, and that the legislation in question in this suit undertakes to grant public money to counties. Appellant urges: (1) That a county is not a municipal corporation, and therefore the Legislature could grant public money to counties; (2) that the legislation does not constitute a grant such as is contemplated in said section 51; (3) that the money which the county is to receive by virtue of such legislation is not public money within the meaning of the Constitution; (4) that if the construction that the money was given or granted to the county would make the legislation unconstitutional, the statute should be construed as appointing the county trustee to receive the funds.

In view of the fact that the committee appointed by the constitutional convention to prepare the article on "Municipal Corporations," by its first section (article 11, § 1) provided that the several counties are recognized as legal subdivisions of the state, and throughout the article made provision for the conduct of municipal affairs of counties as well as cities, it appears that the framers of the Constitution regarded counties as municipal corporations. For instance, in section 6, the current expenses of county government are referred to as expenses of "municipal government." It is also perhaps worthy of notice that by enacting section 8 of said article expressly authorizing donations of land to counties and cities on the Gulf Coast, the constitutional convention showed, not only that it regarded counties and cities as in the same class when it came to matters of state aid, but also that it regarded it as necessary to confer express authority to donate land. As the creation of counties was provided for by another committee which prepared article 9, it appears that there could have been no use in enacting section 1 of article 11 except to expressly recognize counties as municipal corporations to be considered with and provided for in connection with cities and towns. We are also of the opinion that section 3 of article 11 and section 52 of article 3 indicate that counties, cities, and towns were all considered as falling within one class of corporations. Again in section 55 of article 3 reference is made to "any county or other municipal cor-

poration." When the Constitution is considered as a whole, and the evident desire of preventing the Legislature from donating public money or the credit of the state is borne in mind, it is clear that the framers thereof, by the words, "municipal or other corporation whatsoever," used in section 51 of article 3, intended to prohibit grants to counties as well as to cities, towns, and private corporations. No discrimination was made between counties and cities on the Gulf Coast as to donations of land, and no reason can be urged why they would probably have made any distinction with respect to the grant of public money. We conclude that the Legislature has no power to grant public money to counties.

[3] The money which the statute directs to be paid into the county treasury, in so far as it is money obtained by the district attorney out of the state treasury, was public money within the meaning of said section 51. Commissions on forfeitures of bail bonds, which are deducted by him under the provisions of article 1193, Code of Criminal Procedure, do not constitute public money within the meaning of said section. Tarrant County v. Butler, 35 Tex. Civ. App. 421, 80 S. W. 656. The money, retained as commissions, never reaches the treasury of the state and never bears the impress of state money.

[4] We are unable to see any sufficient reason for holding that the legislation does not constitute a grant within the meaning of said section 51. If there was any intention to recognize and discharge an obligation of the state to the counties to which the act applies, such intention is not disclosed in the act. Appellant suggests that the Legislature would have authority to make a direct appropriation to counties to meet any equitable adjustment of the expense of administering the criminal laws, and that, if this be so, then it must follow that the arrangement for meeting this same end automatically through the law of average as applied to that expense in the larger counties, as embodied in the excess fee provision, is only a just and fair provision for taking care of the expense of administering the criminal laws. There is no merit in the suggestion. The act does not purport to deal only with fees of officers whose duty it is to enforce the criminal laws, nor does it impose any extra burdens on any of the favored counties, or purport to make any adjustment. The theory of an adjustment rests on the presumption of inequality in the burdens of government, which presumption cannot be indulged. It is evident that if such a theory could be entertained any direct grant by the Legislature to a city or county could be sustained on the presumption that some kind of an inequality existed as to the burdens of government, whereby an equitable obligation rested upon the state to reimburse the municipality.

We consider the fourth contention also to be untenable. If the language, "shall be paid into the county treasury," should be construed in this case to mean "shall be paid into the county treasury to be held in trust for the state," then it would mean the same thing as to fees collected and paid in by other officers, which fees have not become public money. If the Legislature had intended any such thing, it would have found adequate language in which to express the intention. The fees paid out of the state treasury constitute only a small part of those taken into consideration in enacting the law, and it was doubtless deemed appropriate that the excess fees collected by officers of a county should become the property of the county. The fact that the district attorney, although elected for one county, is a state officer, and that the excess of fees collected by him from the state treasury should go to the state, was doubtless overlooked. We cannot give the language the meaning contended for without adding thereto something which we feel sure the Legislature did not have in mind, and which would conflict with its real intention, and we therefore conclude that a grant to the county, to have and to hold as its own, was meant by the language in question.

In view of the foregoing conclusions, we hold that the provision requiring the payment into the county treasury by district attorneys of the excess fees paid them by the state is in violation of said section 51, article 3, of the Constitution, and therefore void. This conclusion may appear not to be in harmony with what was said in the case of Clark v. Finley, 93 Tex. 171, 54 S. W. 343, but it must be borne in mind that in that case the provision in question was not attacked by pointing out in the pleading the particular provisions of the Constitution which were thought to have been violated, and that the court held the question could not arise in the absence of a showing that an officer had collected fees in excess of those authorized to be retained by him.

[5] This brings us to the consideration of the effect of the invalidity of the provision hereinbefore considered. It is true that one of the main purposes of the law was to limit the compensation of the officers named therein, and that the provision fixing a limit upon the compensation of district attorneys may be said to be, in a way, separable from the question as to what is to be done with the excess, but it is also apparent that, if it be held that the statute limits him as to the amount of fees he can retain out of public money, it follows that he would hold the excess of such fees in trust for the state. The Legislature did not intend for the state to retain title thereto, or else it would doubtless have provided that it would never be paid out of the treasury, and if holding the limitation as to amount valid has the effect of making the excess the property of the state, we would by so holding be justly

chargeable with judicial legislation. When part of an act has been held unconstitutional, and the remaining portion comes up for consideration, the presumption is generally against it, and it will not be sustained unless that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected. Lewis' Sutherland on Stat. Const. (2d. Ed.) § 298. In section 305 the author quotes with approval the following:

"It would seem that the provisions of the statute held to be constitutional should· be substantially the same when considered by themselves as when taken in connection with the other parts of the statute held to be unconstitutional; or, in other words, where that part of a statute which is unconstitutional so limits and qualifies the remaining portion that the latter, when stripped of such unconstitutional provisions, is essentially different, in its effect and operation, from what it would be were the whole law valid, it would seem that the whole law should fall. The remaining portion of the statute, when thus stripped of its limitations and qualifications, cannot have the force of law, because it is not an expression of the legislative will. The Legislature pass an entire statute, on the supposition, of course, that it is all valid and to take effect. The courts find some of its essential elements in conflict with the Constitution, strip it of those elements, and leave the remaining portion mutilated and transformed into a different thing from what it was when it left the hands of the Legislature. The statute, thus emasculated, is not a creature of the Legislature; and it would be an act of legislation on the part of the court to put it in force."

Applying these rules, we hold that the statute, in so far as it undertakes to limit the district attorneys as to fees obtained from the state, is void, and that Bexar county was not and is not entitled to collect from him any excess of such fees.

[6, 7] All of the money paid to Bexar county by plaintiff came out of the state treasury, except $780, consisting of commissions on forfeited bail bonds. The Legislature could require such money to be paid to the county, and it is insisted in behalf of the county that the court erred in permitting plaintiff to recover such sum. On the other hand, appellee contends that the language used in article 3883 does not include commissions, and that therefore the county was not entitled to collect the same from him, even if the statutes in question were valid. In view of the fact that the caption of the original fee bill designates the act as one to limit and regulate the compensation of the named officers, and of the language of the act, it is clear that the word "fees" was used in the broad sense in which it is often used, namely, as including the percentage allowed by law on sums of money received or collected. That the word, "fees," when descriptive of fees of office, is susceptible of such broad meaning is sustained by authority. 19 Cyc. 464, note 57; Pittsburg v. Grenet, 238 Pa. 567, 86 Atl. 462; Smith v. Dunn, 68 Cal. 54, 8 Pac. 625. To hold that it was not used in that sense in the act in question would be to ascribe to the Legislature an intention to favor officers who receive commissions, and to· leave very uncertain the compensation which they were to receive. We, therefore, conclude there is no merit in appellee's theory. We recur, therefore, to the question whether appellee had any right to recover said sum of $780. Appellant relies upon an expression contained in the opinion in the case of Clark v. Finley, supra, as follows:

"If it were unlawful so to appropriate the state's revenue, it would be deemed that the surplus which was paid to the use of the counties was paid from fees collected from private parties."

This indicates an opinion that the legislation may be legally applied to funds not derived from the state, but the application of such a rule presents questions of practical difficulty. If the officer receives more than enough fees from individuals to pay his salary and the expenses allowed under the law, it seems plain that there would be a surplus to which the county would become entitled. We can probably go further, and say that the law is valid in so far as it prescribes that an officer who receives more than the maximum stated therein, regardless of whether it be received from the state or individuals, must account to the county for the excess in so far as it represents funds derived from individuals. This would not mean that if the fees derived from the state exceed the maximum amount, three-fourths of all fees derived from individuals would go to the county, for that would in effect be judicially legislating to the effect that all expenses must be taken out of fees derived from the state, and that fees derived otherwise shall bear no part of such burden. Articles 3889 and 3897, as amended in 1913, provided in effect that the fees of office collected in any year are to be charged with the salary of the district attorney and his assistants; then with one-fourth of the sum then remaining, which one-fourth is also retained by the district attorney; then with the expenses incurred in the conduct of the office; and that the remainder is to be paid into the county treasury. In order not to make any judicial changes in the law, but to apply it as it reads, in so far as it can be done without violating the Constitution, we believe that all fees should be charged with the proportionate part of the deductions made from the total receipts for the year, and that the county would be entitled to receive such portion of the commissions as remains after charging same with their proportionate part of the deductions for the year. During the year beginning December 1, 1914, the receipts amounted to· $8,240, and the remainder, after deducting the items above named, was $2,499.30. The commissions amounted to $780, and the proportionate part thereof to which the county became entitled was therefore, according to our es-

timate, the sum of $236.58. To this there should be added the further sum of $4.92, the county's portion of the commission on the Washburn bond, collected during the year beginning December 1, 1915. The judgment is erroneous to the extent of the aggregate of these two sums. This conclusion has been arrived at with considerable doubt, and the theory adopted has not been advanced in the brief of either party. In fact, in the briefs it is taken for granted that the county is entitled to all of the commissions or none, and counsel present their contentions, without favoring us with a discussion of the theories on which the contentions rest.

[8] Appellant contends that each of the payments made by appellee was a voluntary one, and therefore not recoverable. Appellee pleaded duress, and the judgment of the court carries with it a finding that the payments were not voluntarily made.

The testimony of appellee shows that he made the first payment under the following circumstances: The appellee believed the statute requiring him to pay the excess to the county to be unconstitutional, and failed to make payment until after he had been informed in the grand jury room by the foreman that an indictment had been voted against him and would be presented, unless within a certain number of days he paid into the treasury the sum then due according to the provisions of the statute. He informed the foreman that he considered the law invalid, but that indictment would automatically remove him from office, regardless of whether the Court of Criminal Appeals reversed a conviction, and under the circumstances he would make the payment under protest. He testified that the second payment was made after the assistant district attorney in charge of grand jury work had informed appellee that either the county judge or county auditor, or both of them, had reported to the grand jury his failure to make payment, and the grand jury had been asked to indict; that said assistant district attorney told him that unless the money was paid the grand jury would indict. Appellee made no formal protest at the time of paying either sum into the treasury. After he went out of office he filed this suit. He testified in effect that he did not want to risk an indictment while in office because a conviction would operate as a removal from office. In view of articles 6028 and 6030, R. S. 1911, it appears that appellee erred in believing the conviction would operate as a removal, but this we believe is immaterial. He believed, and upon good grounds, that his failure to pay the sums would result in his removal from office. There is also a controversy between appellant and appellee as to whether a felony statute or a misdemeanor statute would have been invoked by the grand jury. Appellee refers to article 107, Penal Code, which in plain terms makes the failure to pay over money a felony, while appellant refers to article 118, taken from Acts 1907, p. 120, and by the codifiers extended to matters appearing in article 115, not included in said act, but taken from section 2, c. 5, Acts of 1897, as amended on page 50 of Acts of 1907. The portion of article 115 relied on by appellant is embraced in article 3889, R. S. 1911, hereinbefore referred to, which article was amended by the act of 1913, page 246, and such amendment, in connection with article 3897, as amended in the same act, makes a material difference in the duty of the officer, in that he is permitted to deduct the expenses of his office in determining the amount payable to the county. In view of this legislation, it appears that the portion of article 115 upon which an indictment would necessarily have been predicated under article 118 was repealed by implication from and after December 1, 1914. This controversy is also immaterial, we believe, for it appears that the trial court was justified, from the evidence, in finding that appellee believed he would be indicted on a felony charge, and that removal from office would follow, if he did not make the payments, and that he had no adequate means of immediate relief other than that of making the payment, and that this situation caused him to make such payments. This is an unusual case, and we can only apply to the facts the general rules laid down by text-writers and judges concerning duress as applied to the payment of money. Elliott on Contracts, § 144; Ruling Case Law, title, Duress; 22 L. R. A. (N. S.) note, p. 868. Appellant contends that as to the second payment, at least, no sufficient showing of duress was made. It is true that appellee did not wait for the grand jury to vote an indictment and to send for him, but he knew that the grand jury was under no duty of sending for him, and it is hardly probable that it would do so, where the matter was presented as a second offense. We conclude that the evidence is sufficient to sustain the court's finding that neither payment was a voluntary one.

[9] Appellant urges that appellee's cause of action as to the sum of $5,056 paid into the treasury is barred by the statute of limitation of two years, the contention being based on the theory that Bexar county was not made a party to the suit until April 18, 1917, more than two years after the sum was paid to the county. The original petition contains the following introductory paragraph:

"Comes now W. C. Linden, plaintiff, and complaining of the county judge of Bexar county, J. R. Davis, and the four county commissioners, Jake Rubiola, Chris X. Gutzeit, J. H. Covington, and Jacob Klaus of Bexar Co., and of Van H. Howard, Co. Auditor, W. C. Linden, hereinafter styled plaintiff, and alleges."

It then sets out the facts, and alleges that Bexar county is liable to plaintiff for the

sums paid. The prayer is for judgment against Bexar county for the amount sued for, and that the county and its officials be enjoined from demanding payment of the sum claimed by them to be due by plaintiff. The petition was indorsed: E. C. Linden v. County of Bexar. This petition was filed February 19, 1917, and citation issued the same day for all of the defendants, except Bexar county. On February 20th, a citation was issued for Bexar county, and served on February 21st, by delivering a copy to the county judge. The first amended original petition was filed on April 18, 1917, and on April 19th another citation was issued for Bexar county. It is apparently taken for granted by the parties that in the introductory paragraph above copied, Bexar county was omitted, although the wording thereof is such that it might plausibly be contended that the words, "of Bexar Co.," were intended to name Bexar county as a defendant just as were the words, "and of Van Howard, Co. Auditor," to make the county auditor a party. But, taking it as true that the name of the county was omitted in said paragraph, it appears from the petition as a whole that the suit was one against the county, and the prompt issuance of citation thereon was procured. We hold that the suit against the county was filed on February 19, 1917, and therefore overrule the contention as to limitation.

[10, 11] It is further urged that the court erred in awarding appellee interest from the respective dates of the payments made by him, the contention being that as plaintiff made no demand on the county until February 19, 1917, interest should only have been allowed from that date. A diligent investigation of the authorities on the question fails to convince us that the court erred in allowing interest. There are cases in which payment has been made under mistake of fact or law in which interest has only been permitted from date of demand. Ruling Case Law, vol. 15, § 25, and authorities cited in support thereof. But we also find that where taxes were illegally demanded and paid under protest interest was allowed from time of payment. County of Galveston v. Galveston Gas Co., 72 Tex. 509, 10 S. W. 583; In re O'Berry, 179 N. Y. 285, 72 N. E. 109. In equity, interest is allowed in order to afford compensation, and is given or withheld as under the circumstances of the case appears just. This case is not one of mistake of law, strictly speaking, for appellee believed the statute to be unconstitutional, but did not feel that he could afford to depend upon such opinion to the extent of risking a felony prosecution and the probability of temporary or permanent removal from office. His rights are predicated upon the theory that he was coerced into making the payments. The county did not pursue its remedy of a suit on his bond, but used the instrumentalities for the enforcement of the criminal laws, and thereby secured the payment to it of the sums sued for by appellee. No distinction can, under our decisions, be predicated on the fact that the suit is against a county. County of Galveston v. Gas Co., supra; Comanche County v. Burks, 166 S. W. 470. We conclude that under the facts of this case it cannot be held that the court erred with regard to time from which interest should be allowed.

[12] The court erred in taxing the costs against appellant incident to making the defendants other than the county parties to the suit.

The judgment will be reformed by deducting from the sum of $5,056.47 the sum of $236.58, and so as to award the county the sum of $4.92, due as its portion of the commission on the Washburn bond collection, which sum, for the sake of convenience, will be deducted from the sum of $1,863.23. Interest will be computed on the amounts thus obtained from the respective dates when the payments were made to the county to the date of the judgment of the trial court and judgment rendered for plaintiff for the aggregate amount, with interest thereon at the rate of .6 per cent. per annum from the date of judgment of the trial court. The costs of making the defendants other than the county parties to the suit are adjudged against appellee. Except as to the small sum due on the Washburn commission, above mentioned, the county will take nothing by its cross-action. As thus reformed, the judgment will be affirmed.

Reformed and affirmed.

### On Motion for Rehearing.

Our attention has been called to inaccuracies in the figures stated in our original opinion as the proportionate portion of the $780 and the $20 commissions which we awarded to the county. The part of the $780 fee to which the county is entitled is $236.58, and of the $20 fee is $4.92. The figures will be changed in the original opinion to correspond to the above amounts, and the judgment corrected in similar manner.

The motion for rehearing is overruled.